## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANITA BERGER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>L.L. BEAN INC.<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Anita Berger ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to facts pertaining to herself and on information and belief as to all other matters, by and through her undersigned counsel, brings this class action complaint against defendant L.L. Bean, Inc. ("L.L. Bean" or the "Company").

### NATURE OF THE ACTION

1.      Since 1912, L.L. Bean has sought and earned the trust and respect of its customers by providing a "100% Satisfaction Guarantee," pursuant to which it promised to exchange or replace items if a customer determined that the item was not "completely satisfactory" (the "Guarantee").  This highly publicized and widely-known Guarantee has, for decades, been part of the benefit of the bargain for purchasers of L.L. Bean products.  L.L. Bean's Guarantee has become almost entirely intertwined with the L.L. Bean brand.

2.      On February 9, 2018, L.L. Bean rescinded the Guarantee and announced significant limitations.

3.      In a February 9, 2018 letter from L.L. Bean Executive Chairman Shawn O. Gorman, posted on the Company's Facebook page (and e-mailed to some previous consumers

including Plaintiff), L.L. Bean announced it had "updated" its Guarantee.  In a marked shift from the decades-old Guarantee, the new terms require L.L. Bean customers to present an item within one year after purchasing, accompanied by proof of purchase, in order to return or replace an unsatisfactory item.  For products purchased more than a year prior, the Guarantee expired, and L.L. Bean has stated it would "consider," in its discretion, whether it would accept the return of an item on the basis that it was "defective due to materials or craftsmanship," but only with proof of purchase, and not solely because the item was no longer satisfactory to the purchaser.  In addition, the new warranty excludes from coverage completely returns where L.L. Bean determines certain "Special Conditions" apply, including products damaged by "misuse," "improper care," and "excessive wear and tear."  The Guarantee of "complete satisfaction," bargained and paid for by years of loyal customers, has been suddenly and unilaterally withdrawn by L.L. Bean.

4.      As a result of L.L. Bean's deceptive and unfair repudiation of its Guarantee and violation of the Magnuson Moss Warranty Act and other law, Plaintiff and all other L.L. Bean customers who bought products before February 9, 2018, did not receive what they bargained for.

5.      Plaintiff brings this action on behalf of herself and all others similarly situated, to recover the lost benefit of the bargain attributable to L.L. Bean's repudiation of its warranty, or in the alternative, to require L.L. Bean to honor the terms of its warranty that was the basis of the bargain, and a declaration that (1) L.L. Bean's February 9, 2018 announcement that it would no longer honor the Guarantee with no end date or questions asked constitutes a violation of the law and a breach of warranty; (2) L.L. Bean must continue to honor the warranty with no end date and no questions asked as to goods purchased prior to February 9, 2018; and (3) L.L. Bean must

provide the best notice practicable under the circumstances designed to reach past and future L.L. Bean customers, and corrective advertising regarding the changes to its warranty.

## JURISDICTION AND VENUE

6.     This Court has original subject matter jurisdiction over the case under 28 U.S.C. § 1332(d) because the case is brought as a class action under Fed. R. Civ. P. 23, at least one member of the proposed Classes (defined below) is of diverse citizenship from L.L. Bean, the proposed Classes include more than 100 members, and the aggregate amount in controversy exceeds five million dollars, excluding interest and costs.

7.     Venue is proper in this District under 28 U.S.C. § 1391 because L.L. Bean engaged in substantial conduct relevant to Plaintiff's claims within this District, and has caused harm to members of the proposed Classes residing within this District.

## PARTIES

8.     Plaintiff Anita Berger ("Berger" or "Plaintiff") is a resident of Staten Island, New York.  Ms. Berger is a long-time L.L. Bean customer who has purchased various products from the Company over the years.  Most recently, on November 16, 2016, she purchased by phone a long "Ultrawarm Coat" listing for $269.00.  The L.L. Bean Guarantee, which would allow her to return the coat at any time if she was not completely satisfied, was part of the basis of Plaintiff's bargain with L.L. Bean.  Given the Company's sudden reversal of its long-standing Guarantee, however, Ms. Berger has been injured and has been deprived of the benefit that formed a basis of the bargain between her and L.L. Bean.

9.     Defendant L.L. Bean is a Maine corporation headquartered in Freeport, Maine.

## FACTUAL ALLEGATIONS

10.    L.L. Bean was founded in 1912 by Leon Leonwood (L.L.) Bean and, under the leadership of his grandson, Leon Gorman, was eventually transformed into a globally-recognized brand of outdoor clothing and equipment.  The Company opened its first retail store in Freeport, Maine in 1917 and now operates at least 30 domestic retail stores outside of Maine—as far south as Virginia and as far west as Colorado—as well as 10 outlets.  L.L. Bean opened its first international retail store in Tokyo in 1992, and currently operates approximately 25 stores and outlets in Japan.  In 1995, L.L. Bean launched its website, which serves over 200 countries and territories. The Company also mails catalogs to customers in every state and over 150 countries.

11.    L.L. Bean has long maintained a reputation for outstanding customer service, both among its customers and throughout the retail industry.  This positive reputation (and consequent revenue) was largely founded on the Company's comprehensive Guarantee that, until recently, read as follows:

> Easy Returns & Exchanges
> We make pieces that last, and if they don't, we want to know about it. L.L. himself always said that he "didn't consider a sale complete until goods are worn out and the customer still satisfied."  Our guarantee is a handshake – a promise that we'll be fair to each other.  So if something's not working or fitting or standing up to its task or lasting as long as you think it should, we'll take it back. We want to make sure we keep our guarantee the way it's always been for over a century.[1]

---

[1] This quote has been copied from an Internet archive of L.L. Bean's website as it appeared in November 2016.  *See* https://web.archive.org/web/20161128235134/https://www.llbean.com/llb/shop/510624?page=returns-and-exchanges (last visited Feb. 27, 2018).

12.     Commenting on the Guarantee on February 10, 2017, an L.L. Bean spokesperson told *Business Insider* that the "vast majority" of customers adhere to the original intent of the Guarantee:

> Our guarantee is not a liability, but rather a customer service asset – an unacknowledged agreement between us and the customer, that always puts the customer first and relies on the goodwill of our customers to honor the original intent of the guarantee.[2]

13.     In addition to serving as a "customer service asset," the Guarantee provided L.L. Bean with a tremendous amount of marketing material, both in-store[3] and on its website.[4]



---

[2] Dennis Green, *L.L. Bean is considering dropping its legendary return policy because of 'fraudulent returns'*, Business Insider (Feb. 10, 2017), available at http://www.businessinsider.com/ll-bean-is-considering-dropping-its-return-policy-2017-2 (last visited Feb. 27, 2018).

[3] *See, e.g.,* Anna Maconachy, *Photos: L.L. Bean Opens in Columbus*, Columbus Underground (Nov. 20, 2015), http://www.columbusunderground.com/l-l-bean-columbus-am1 (last visited Feb. 27, 2018).

[4] *See, e.g.,* screenshot of L.L. Bean return policy, as of December 2017, available at https://web.archive.org/web/20130516210231/http://www.llbean.com:80/customerService/about LLBean/guaranteed_popup.html (last visited Feb. 27, 2018).



14.     For years, L.L. Bean catalogs also proudly touted the Company's purportedly "rock-solid" 100% Satisfaction Guarantee:



15.    The cover of the Christmas 2013 catalog, for example, promised that the 100%

satisfaction Guarantee had "No Conditions" and "No End Date."



16.    The Guarantee also implicitly and explicitly represented to customers that L.L.
Bean's products were well-made and remarkably long-lasting.



17.     The Spring 2015 issue of *L.L. Bean Fishing* promised:  "At L.L. Bean, your satisfaction doesn't have a time limit."



18.     On February 9, 2018, however, time suddenly ran out on L.L. Bean's promise of

100% satisfaction.  In a statement posted on the Company's Facebook page (and emailed to some

customers including Plaintiff), L.L. Bean's Executive Chairman announced that, effective immediately, "[c]ustomers will have one year after purchasing an item to return it, accompanied by proof of purchase."



**L.L.Bean** ✔
February 9 at 6:33am · 🌐

A Letter to Our Customers,

Since 1912, our mission has been to sell high-quality products that inspire and enable people to enjoy the outdoors. Our commitment to customer service has earned us your trust and respect, as has our guarantee, which ensures that we stand behind everything we sell.

Increasingly, a small, but growing number of customers has been interpreting our guarantee well beyond its original intent. Some view it as a lifetime product replacement program, expecting refunds for heavily worn products used over many years. Others seek refunds for products that have been purchased through third parties, such as at yard sales.

Based on these experiences, we have updated our policy. Customers will have one year after purchasing an item to return it, accompanied by proof of purchase. After one year, we will work with our customers to reach a fair solution if a product is defective in any way.

This update adds clarity to our policy and will only affect a small percentage of returns. It will also ensure we can continue to honor one of the best guarantees in retail, with no impact for the vast majority of our customers. To learn more, please view our full return policy at llbean.com.

L.L.Bean has stood for quality, service, trust, and getting people outdoors ever since my great-grandfather founded our company over 100 years ago - and that will never change. Thank you for being a loyal customer and we look forward to continuing to inspire and enable you to Be an Outsider.

Sincerely,
Shawn O. Gorman
L.L.Bean Executive Chairman

8.6K Likes  3.5K Comments  2.2K Shares

19.     The return policy on the Company's website now reads:

If you are not 100% satisfied with one of our products, you may return it within one year of purchase for a refund. After one year, we will consider any items for return that are defective due to materials or craftsmanship.[5]

We require proof of purchase to honor a refund or exchange. If you provide us your information when you check out, we will typically have a record of your purchase. Otherwise, we require a physical receipt.

Please include your proof of purchase with the products you wish to return or exchange and bring it with you to any of our stores, or include it in your package of returned item(s). We will reimburse the original purchase price to either your original method of payment or as a merchandise credit.

**Gift Returns**

We are happy to accept gift returns within one year of purchase when you provide proof of purchase (i.e. a gift receipt), in which case a merchandise credit will be issued for the original selling price. If you don't have a gift receipt, we will still accept your return if the item is unused and unworn with the original packaging, and you will receive a merchandise credit for the last known selling price.

**Special Conditions**

To protect all our customers and make sure that we handle every return or exchange with reasonable fairness, we cannot accept a return or exchange (even within one year of purchase) in certain situations, including:

- Products damaged by misuse, abuse, improper care or negligence, or accidents (including pet damage)
- Products showing excessive wear and tear
- Products lost or damaged due to fire, flood, or natural disaster
- Products with a missing label or label that has been defaced
- Products returned for personal reasons unrelated to product performance or satisfaction
- Products that have been soiled or contaminated, until they have been properly cleaned
- Returns on ammunition either in our stores or through the mail
- On rare occasions, past habitual abuse of our Return Policy

20.     The dramatic change in the Guarantee has caused an outcry among the

Company's customers, with many angrily arguing that the changes are too restrictive and others

declaring that they will no longer shop at L.L. Bean.

---

[5] L.L. Bean Home Page, https://www.llbean.com/llb/shop/513705?nav=ftlink-hp (last visited Feb. 27, 2018).

21.     Customers who have had warranty returns of purchases made prior to February 9, 2018, improperly denied by L.L. Bean have taken to social media to express their displeasure:



I was just denied my return of the same storm chasers boots on the phone with the manager at the danbury fair ct location they didn't even see the product they looked up my information & because I returned them a few times before for the same issue they refuse to exchange them out for a better quality boot. they are supposed to be water proof but completely soak my socks I have 2 pairs. They didn't even look at the boots in person. The manager was was mean & telling as of yesterday the new policy took affect & there is nothing we can do if I came thursday they would've replaced them!! What kind of company is LL Bean to treat ppl this way & They clearly stated that after 1 year they would still accept defective items But their associates clearly don't understand that!!! I WILL NEVER GO BACK TO LL BEAN AGAIN!!!!!!! I hope they go outta business!!!!!!!

Like · Reply · 6d

· Feb 12

Replying to @LLBean

Kiddo's 1 year old coat zipper broke literally the day before the policy changed...store can't find the record under our names and said they can't look up through the credit card. She talked to me like I was a liar, and I cried in the car for 10 min. This was a ton of $ for us 😔



💬 1          ↻          ♡          ✉

14



· 12m                                          ⌄

Saved this thing for more than year and for
what??? A lady to tell me they can't replace my
moccasins that HAVE A TEAR IN THE SEAM.
@LLBean

**Guaranteed. You Have Our Word.®**

Our products are guaranteed to give 100% satisfaction
in every way. Return anything purchased from us at any
time if it proves otherwise. We do not want you to have
anything from L.L. Bean that is not completely satisfactory.

ⵔ         ⇄ 1              ♡ 1              ✉

‹         Monday at 10:02 AM · 🌐         •••

Dear **L.L.Bean** it has been nice shopping with you all
these 35+ years. I've enjoyed over paying for kids
clothing and spending lots on money (like lots!!) with
you annually to outfit all my kids and outdoor gear.
However now that you told me that my $170 kids
jacket purchased 2 months ago didn't hold up
because "something happened to it" when it was
clearly a inferior product that ripped without any signs
of damage/stress/abrasion or abuse, I'm calling you
out.

Oh and when I politely asked you to look at the jacket
because kids accidents don't happen on patterns that
follow the fabric weak point. (Ya know there is this
thing called physics and science.....) you then
shockingly reply to me that it must have been
something my 7 year old kid cut at school with an
exacto knife.....really Beans, really!!!! Did you just
insult me and my child?? Check my E records, do
those $ metrics look like I'm a WT yard sale
returner??? Let me school you on fabrics, those are
two exactly similar right angle shapes that no way
resemble kiddo abuse....thats poor fabric failing. WTF

I say to you two words. AMAZON PRIME!! Been nice
knowing you Beans, I will spent my money elsewhere.
Sad!!!

22.     Plaintiff and the members of the Classes did not receive that which was promised

and represented to them. Unbeknownst to Plaintiff and the other Class members, rather than

15

purchasing products accompanied by a 100% Satisfaction Guarantee, they were purchasing products that would become subject to an exceptionally limited warranty, for which proof of purchase was required.  Accordingly, because Plaintiff and the other Class members did not receive the benefit of the bargain, Plaintiff and the Class members overpaid for the products they purchased.

## CLASS ALLEGATIONS

23.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of a class defined as follows (sometimes referred to as the "Nationwide Class"):

> All persons in the United States and its territories who purchased, other than for resale, products from L.L. Bean prior to February 9, 2018.

Excluded from the Nationwide Class are:  (i) L.L. Bean and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Nationwide Class members that timely and validly request exclusion from the Nationwide Class; and (iii) the Judge presiding over this action.

24.     Alternatively, Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following subclass (sometimes referred to as the "New York Subclass"):

> All persons in the State of New York who purchased, other than for resale, products from L.L. Bean prior to February 9, 2018.

Excluded from the New York Subclass are:  (i) L.L. Bean and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all New York Subclass members that timely and validly request exclusion from the New York Subclass; and (iii) the Judge presiding over this action.  The Nationwide Class and the New York Subclass are sometimes collectively referred to as the "Classes."

25.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

26.     The members of the Classes are so numerous that joinder of the members of the Classes would be impracticable.  On information and belief, the Nationwide Class numbers in the tens of thousands while the New York Subclass numbers in the thousands.

27.     Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individuals.  Such common questions of law or fact include, *inter alia*:

A.     Whether L.L. Bean engaged in the conduct alleged;

B.     Whether L.L. Bean breached its contracts with Plaintiff and members of the Classes;

C.     Whether L.L. Bean's conduct violated Sections 349 and 350 of the New York General Business Law;

D.     Whether Plaintiff and members of the Classes have been damaged and, if so, the measure of such damages;

E.     Whether L.L. Bean unjustly retained a benefit conferred by Plaintiff and the members of the Classes;

F.     Whether Defendant's conduct violated the Magnuson Moss Warranty Act; and

G.     Whether Plaintiff and members of the Classes are entitled to equitable relief, including, but not limited to, a constructive trust, restitution, declaratory, and injunctive relief.

28.     Plaintiff's claims are typical of the claims of the Classes because, among other things, Plaintiff and the Classes were injured through the substantially uniform misconduct described above.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Classes.

29.     Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

30.     A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because L.L. Bean has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.  L.L. Bean has directed and continues to direct its conduct to all consumers in a uniform manner.  Therefore, injunctive relief on a class-wide basis is necessary to remedy continuing harms to Plaintiff and the members of the Classes caused by L.L. Bean's continuing misconduct.

31.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other detriment suffered by Plaintiff and the members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against L.L. Bean, so it would be impracticable for members of the Classes to individually seek redress for L.L. Bean's wrongful conduct.  Even if members of the Classes could afford individual litigation, the court system should not be required to undertake such an unnecessary burden.  Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

18

## CLAIMS FOR RELIEF

### COUNT I
**Breach of Contract**
**(On Behalf of the Nationwide Class)**

32.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33.     Each and every sale of an L.L. Bean product, until February 9, 2018, included the Guarantee and created a contract between it and the purchaser of the product, including Plaintiff.

34.     L.L. Bean breached these contracts by unilaterally rescinding the Guarantee promised to, and bargained for by Plaintiff and its customers in exchange for money paid to L.L. Bean for each and every product purchased.

35.     As a direct and proximate result of L.L. Bean's breach of contract, Plaintiff and the Nationwide Class have been damaged in an amount to be proven at trial.

### COUNT II
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

36.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

37.     L.L. Bean has been unjustly enriched to Plaintiff's and the Nationwide Class members' detriment as a result of the Company's unlawful and wrongful retention of money conferred by Plaintiff and the Nationwide Class members who were unaware that L.L. Bean would soon refuse to honor its longstanding Guarantee, such that L.L. Bean's retention of their money would be inequitable.

38.     L.L. Bean's unlawful and wrongful acts, including breaching its written and express warranties, as alleged above, enabled L.L. Bean to unlawfully receive monies it would not have otherwise obtained.

39.     Plaintiff and the Nationwide Class members have conferred benefits on L.L. Bean, which L.L. Bean has knowingly accepted and retained.

40.     L.L. Bean's retention of the benefits conferred by Plaintiff and the Nationwide Class members would be against fundamental principles of justice, equity, and good conscience.

41.     Plaintiff and the Nationwide Class members seek to disgorge L.L. Bean's unlawfully retained profits and other benefits resulting from its unlawful conduct, and seek restitution and rescission for the benefit of Plaintiff and the Nationwide Class members.

42.     Plaintiff and the Nationwide Class members are entitled to the imposition of a constructive trust upon L.L. Bean, such that its unjustly retained profits and other benefits are distributed equitably by the Court to and for the benefit of Plaintiff and the Nationwide Class members.

## COUNT III
### Violation of New York General Business Law § 349
### (On Behalf of the New York Subclass)

43.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

44.     Plaintiff and the other members of the New York Subclass are "persons," as defined by New York General Business Law ("GBL") § 349(h).

45.     L.L. Bean is a "person," "firm," "corporation," or "association," as defined by GBL § 349.

46.     GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law § 349.  L.L. Bean's conduct directed toward consumers, as described herein, constitutes "deceptive acts or practices" within the meaning of the GBL.

47.     L.L. Bean's actions as set forth above occurred in the conduct of trade or commerce.

48.     In the course of its business, L.L. Bean engaged in unlawful trade practices by employing deception, deceptive acts or practices, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of its products.

49.     In the course of L.L. Bean's business, it deceived consumers by suddenly eliminating its Guarantee.  L.L. Bean compounded the deception by continuing to tout its "100% Satisfaction Guarantee," and by continuously claiming that its products are "guaranteed to last."

50.     L.L. Bean knew or should have known that its conduct violated GBL § 349.

51.     As a direct and proximate result of L.L. Bean's violations of GBL § 349, Plaintiff and the other members of the New York Subclass have suffered injury-in-fact and actual damages caused by L.L. Bean's deceptive acts.  Had they been aware that the Guarantee would soon be eliminated, Plaintiff and the other members of the New York Subclass either would have paid less for the products they purchased from L.L. Bean or they would not have purchased those products at all.  Accordingly, as a result of L.L. Bean's misconduct, Plaintiff and the other members of the New York Subclass did not receive the benefit of their bargain.

52.     Because L.L. Bean's willful and knowing conduct caused injury to the New York Subclass, Plaintiff and the New York Subclass seek recovery of actual damages or $50,

whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining L.L. Bean's deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

### COUNT IV
### Violation of New York General Business Law § 350
### (On Behalf of the New York Subclass)

53.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

54.     L.L. Bean was and is engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

55.     GBL § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce."   N.Y. Gen. Bus. Law § 350.   False advertising includes "advertising, including labeling, of a commodity…if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of…representations [made] with respect to the commodity…"  N.Y. Gen. Bus. Law § 350-a.

56.     L.L. Bean caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and that were known, or by which the exercise of reasonable care should have been known, to L.L. Bean to be untrue and misleading to consumers and the New York Subclass.

57.     L.L. Bean has violated GBL § 350 because the misrepresentations and omissions regarding its Guarantee, as set forth above, were material and likely to deceive a reasonable consumer.

58.     Plaintiff and the other members of the New York Subclass have suffered an injury, including the loss of money or property, as a result of L.L. Bean's false advertising.   In

purchasing products from L.L. Bean, Plaintiff and the New York Subclass relied on the misrepresentations and omissions of L.L. Bean with respect to the Guarantee that accompanied the products. L.L. Bean's representations were misleading in a material respect because L.L. Bean eliminated the Guarantee. Had Plaintiff and the other members of the New York Subclass known this, they would not have purchased L.L. Bean products or they would have paid less for those products.

59.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and the New York Subclass seek monetary relief against L.L. Bean measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for every New York Subclass member. Because L.L. Bean's conduct was committed willfully and knowingly, each New York Subclass member is entitled to recover three times actual damages, up to $10,000.

60.     Plaintiff and the New York Subclass also seek an order enjoining L.L. Bean's unfair, unlawful, and deceptive practices, attorneys' fees, and any other just and proper relief available under GBL § 350.

## COUNT V
**Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.***
**(On behalf of the Nationwide Class)**

61.     Plaintiff realleges and incorporates by reference paragraphs 1–31 as if fully set forth herein.

62.     Plaintiff is a "consumer" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(3).

63.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

23

64.     L.L. Bean sells "consumer products" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(1).

65.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer that is damaged by the failure of a warrantor to comply with a written warranty.

66.     Defendant's representations as described herein that Plaintiff and other Class members would be able to return merchandise for any reason at any time is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

67.     The Guarantee formed a basis of the bargain.

68.     Defendant failed to comply with the Guarantee as described herein. On February 9, 2018, L.L. Bean announced that it would refuse to honor the Guarantee.

69.     Defendant knew, or should have known, that its misrepresentations regarding the Guarantee were material and formed the basis of the bargain between Plaintiff and the Class and Defendant, yet proceeded with its decision to renounce the Guarantee.

70.     Plaintiff and Class members were damaged as a result of Defendant's breach of written warranty, and they were deprived of their benefit of the bargain.

<u>**COUNT V**</u>
**Declaratory Relief**
**(On behalf of the Nationwide Class)**

71.     Plaintiff realleges and incorporates by reference paragraphs 1–31 as if fully set forth herein.

72.     Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

73.     Defendant marketed, distributed, and sold its products with the Guarantee, as described herein.

74.     On February 9, 2018, L.L. Bean publicly announced that it was no longer honoring the Guarantee and was instead imposing a new limited, one-year warranty subject to numerous exceptions and qualifications.

75.     As a result of L.L. Bean's conduct, Plaintiff and the other Class members who purchased L.L. Bean products and the Guarantee are deprived of the benefit of the bargain. Accordingly, Plaintiff seeks entry of the following declarations:  (1) L.L. Bean's February 9, 2018 announcement that it would no longer honor the Guarantee with no end date or questions asked constitutes a violation of the law and a breach of warranty; (2) L.L. Bean must continue to honor the warranty with no end date and no questions asked as to goods purchased prior to February 9, 2018; and (3) L.L. Bean must provide the best notice practicable under the circumstances designed to reach past and future L.L. Bean customers, and corrective advertising regarding the changes to its warranty, including a prominent one-page notification in its catalog for each edition distributed prior to February 9, 2019, and notification to each customer at the point of sale that products may be returned within one year for a refund, subject to special conditions, and, after one year, the item may be returned only if it is defective due to materials or craftsmanship, and that proof of purchase to honor the refund is required for any return.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against defendant L.L. Bean as follows:

A.     Certifying the Classes under Federal Rule of Civil Procedure 23;

B.      Appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

C.      Awarding Plaintiff and the members of the Classes damages and/or equitable relief as appropriate;

D.      Awarding Plaintiff and the Classes declaratory and injunctive relief;

E.      Awarding Plaintiff and the members of the Classes restitution and disgorgement;

F.      Imposing a constructive trust for the benefit of Plaintiff and the members of the Classes on the unjustly retained benefits conferred by Plaintiff and the other members of the Classes upon L.L. Bean;

G.      Awarding Plaintiff and the Classes reasonable attorneys' fees, costs, and expenses; and

H.      Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a trial by jury on all claims so triable.


Dated: New York, New York           Respectfully submitted,
       February 27, 2018

                                    **WOLF HALDENSTEIN ADLER**
                                      **FREEMAN & HERZ LLP**


                                By:  _s/ *Michael M. Liskow*_____

                                Janine Pollack
                                Michael M. Liskow
                                Correy A. Kamin
                                270 Madison Avenue
                                New York, New York 10016
                                Tel.: (212) 545-4600
                                Fax: (212) 686-0114
                                pollack@whafh.com
                                liskow@whafh.com
                                kamin@whafh.com

Alen R. Beerman
**ROSEMAN, BEERMAN**
**& BEERMAN LLP**
3000 Marcus Ave., Suite #3w6
Lake Success, New York 11042
Tel.: (516) 327-4600
Attorneys@rosenmanbeerman.com

Ben Barnow
Erich P. Schork
Jeffrey Blake
Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
1 North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000 (p)
(312) 641-5504 (f)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
j.blake@barnowlaw.com
aparkhill@barnowlaw.com

*Attorneys for Plaintiff*

797776

27