FILED
IN CLERK'S OFFICE   Rec'd M/T
US DISTRICT COURT E.D.N.Y.

★ JAN 08 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ANITA BERGER, individually and on behalf of all :
others similarly situated, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Plaintiff, 　　　　　　　　:　　MEMORANDUM & ORDER
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　-against-　　　　　　　　　　　　　　 :　　18-cv-1280 (ENV) (SMG)
　　　　　　　　　　　　　　　　　　　　　　　　　　:
L.L. BEAN, INC., 　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Defendant. 　　　　　　　 :
------------------------------------------------------------- x

VITALIANO, D.J.

　　Plaintiff Anita Berger, individually and on behalf of all others similarly situated, has filed a putative class action complaint, demanding damages and equitable relief for harm supposedly arising out of changes in L.L. Bean's "satisfaction guarantee" policy. Compl. (ECF No. 1). On behalf of a nationwide class, consisting of herself and all other "persons in the United States and its territories who purchased, other than for resale, products from L.L. Bean prior to February 9, 2018," *id.* ¶¶ 8, 23, she alleges (1) breach of contract, (2) unjust enrichment, and (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* Compl. ¶¶ 32-42, 61-75. Separately, she asserts claims on behalf of a New York subclass, consisting of all persons in the State of New York who purchased, other than for resale, products from L.L. Bean prior to February 9, 2018. On behalf of the New York subclass, she alleges (1) violation of New York General Business Law § 349 and (2) violation of New York General Business Law § 350. Compl. ¶¶ 43-60. L.L. Bean has moved (1) to dismiss this action for lack of subject matter jurisdiction and failure to state a claim, and (2) to strike the class allegations. For reasons that will be discussed below, L.L. Bean's motion to dismiss is granted because this Court lacks

1

subject matter jurisdiction. Lacking jurisdiction, the Court cannot and does not reach the motion to dismiss for failure to state a claim or the motion to strike.

Background

For much of its history, L.L. Bean provided a "100% Satisfaction Guarantee," *id.* ¶ 15 (quoting L.L. Bean Catalog, Christmas 2013), on its products, promising that "if something's not working or fitting or standing up to its task or lasting as long as you think it should, [the company would] take it back," *id.* ¶ 11 (quoting *Returns and Exchanges*, L.L. Bean (Nov. 28, 2016), https://www.llbean.com/llb/shop/510624 [https://web.archive.org/web/20161128235134/https://www.llbean.com/llb/shop/510624] ("Old Policy")). It advertised that this guarantee had "[n]o [c]onditions" and "[n]o [e]nd [d]ate." Compl. ¶ 15 (quoting L.L. Bean Catalog, Christmas 2013).

Then came the change that sent plaintiff sprinting for the courthouse. On February 9, 2018, L.L. Bean modified its satisfaction guarantee policy. It announced that customers who purchase L.L. Bean products on or after February 9, 2018 and who "are not 100% satisfied . . . may return [the products] within *one year* of purchase for a refund. After one year, [L.L. Bean] will consider any items for return that are defective due to materials or craftsmanship." *Id.* ¶ 19 (emphasis added) (quoting L.L. Bean, https://www.llbean.com/shop/513705). Going forward, L.L. Bean announced, its lifetime guarantee would now be largely limited to one year.

However, this change in L.L. Bean's guarantee was not retroactive. Although plaintiff alleges that certain provisions of the guarantee were changed retroactively, she does not dispute that the guarantee applicable to her purchases remains of lifetime duration. Rather, she alleges that the guarantee was changed retroactively only insofar as "[a]ll returns, including returns of Prior Purchases, are now subject to a mandatory proof of purchase requirement and various

2

Special Conditions unilaterally declared by Defendant." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1 (ECF No. 28-10) ("Opp'n"). That is, if plaintiff wishes to return a purchase made prior to the change in policy, she must produce proof of purchase. Moreover, as relevant to plaintiff's action, the new special conditions include the requirement that "products not be 'damaged by misuse, abuse, improper care or negligence, or accidents (including pet damage)' or suffer from 'excessive wear and tear.'" *Id.* at 3 (quoting Compl. ¶ 19).

Berger is a long-time L.L. Bean customer who, on November 16, 2016, purchased an "Ultrawarm Coat" from the company. Compl. ¶ 8. On February 28, 2018, less than three weeks after the announced policy change, plaintiff filed the instant complaint, despite the fact that she had never tried to return her jacket and had no intention of doing so. On June 11, 2018, the parties filed their fully briefed motion. In the intervening time, courts in the Northern District of Illinois, *Bondi v. L.L. Bean, Inc.*, No. 18-cv-1101 (RWG), 2018 WL 3157712 (N.D. Ill. June 28, 2018), and the Northern District of California, *Shirley v. L.L. Bean, Inc.*, No. 18-cv-2641 (YGR) (N.D. Cal. Aug. 15, 2018), have dismissed similar actions.

## Legal Standard

A federal court must dismiss a case for lack of subject matter jurisdiction when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The burden of establishing federal subject matter jurisdiction rests on the shoulders of the party invoking jurisdiction, not the party challenging it, and proof of jurisdiction must be by a preponderance of the evidence. *See, e.g., Augienello v. FDIC*, 310 F. Supp. 2d 582, 587-88 (S.D.N.Y. 2004). Although a court "must accept as true all material factual allegations in the complaint," it must not draw inferences favorable to the party

3

asserting jurisdiction, with respect to the question of jurisdiction, *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), and it "may resolve disputed factual issues by reference to evidence outside the pleadings," *Augienello*, 310 F. Supp. 2d at 588. Moreover, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Id.* (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).

Discussion

I. Federal Jurisdiction

Because the Court has no power to address the merits of a case in the absence of subject matter jurisdiction, defendant's 12(b)(1) motion must be decided before reaching its 12(b)(6) or 12(f) motion. *See Polera v. Bd. of Educ.*, 288 F.3d 478, 481 (2d Cir. 2002). In adjudicating this fundamental question, it must be kept in mind that, despite the supremacy of federal law, federal courts, unlike their state brethren, are courts of limited subject matter jurisdiction. *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). "A federal court's entertaining a case that is not within its subject matter jurisdiction is no mere technical violation; it is nothing less than an unconstitutional usurpation of state judicial power." *Atanasio v. O'Neill*, 235 F. Supp. 3d 422, 424 (E.D.N.Y. 2017) (citations omitted); *see also Vera v. Republic of Cuba*, 867 F.3d 310, 316 (2d Cir. 2017) ("[S]ubject matter jurisdiction 'functions as a restriction on federal power.'" (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982))).

Consequently, given their limited role in the judicial system established by our Constitution, federal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction, and must dismiss a case when they find subject matter jurisdiction lacking. Although L.L. Bean has trained its fire on this core threshold issue, had it not, the

Court, indeed, would be obligated to consider it. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 316, 126 S. Ct. 941, 163 L. Ed. 2d 797 (2006) ("Subject-matter jurisdiction . . . must be considered by the court on its own motion, even if no party raises an objection."); *Durant*, 565 F.3d at 62 (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908)).

II. Standing

    a. Article III Requirements

Article III of the Constitution "limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). The Supreme Court has interpreted this grant of power to require that a plaintiff have standing to sue and, further, that the requirements of standing continue to be satisfied throughout the litigation from start to finish. Article III standing has three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Id.* (citations omitted). In its most recent restatement of standing doctrine, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 625 (2016), the Supreme Court clarified the concreteness requirement. *Id.* at 1547-50. "Second, there must be a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560 (citation omitted). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted). With these demanding requirements, plainly, if a plaintiff lacks standing, an action

must be dismissed. *See, e.g., HealthNow N.Y., Inc. v. New York*, 448 F. App'x 79, 82 (2d Cir. 2011) (summary order).

b. Speculative Injury

Though she contorts her pleadings to show otherwise, it is evident that Berger has not suffered a concrete injury-in-fact. Emphatically, the warranty on her jacket was not shortened to only one year. Berger's only arguable injury is that, if, in the future, she attempts to return her jacket, she will, first, have to produce proof of purchase, and, second, worry that the return will not be accepted because L.L. Bean determines that the jacket was damaged due to misuse or excessive wear and tear. But these concerns are, at best, distant since Berger has not attempted to return an L.L. Bean product and been refused a refund. She has not even alleged that she is dissatisfied with her jacket or intends to return it in the future. Nor has she claimed to lack proof of purchase. For this reason, to the extent plaintiff's injury is her purported future inability to return her jacket, she has not satisfied the requirements of Article III standing.

The Supreme Court has repeatedly walled off federal courts from hearing cases involving speculative injuries. It has held that an injury must be "actual or imminent," *Lujan*, 504 U.S. at 560, or "certainly impending," *Clapper v. Amnesty Int'l, U.S.A.*, 568 U.S. 398, 410, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)). To demonstrate standing, there must, at least, be a "'substantial risk' that the harm will occur." *Id.* at 414 n.5 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 152, 130 S. Ct. 2743, 177 L. Ed. 2d 461 (2010)). Here, Berger has made no showing that such a risk exists. It is clear that the rejection of her return is not certainly impending because the complaint does not even remotely suggest that Berger will ever seek a return. So, even if Berger is correct about the changes to L.L. Bean's policy, she has not yet

6

been injured by these changes, and it is unclear whether she ever will be.

   c. <u>Decrease in Value</u>

Apparently sensing the need to shore up jurisdictional footing, to address these concerns, Berger frames her injury as a decrease in the value of her coat, placing significant reliance on the Second Circuit's decision in *Dubuisson v. Stonebridge Life Insurance Co.*, 887 F.3d 567 (2d Cir. 2018), in which the circuit confronted the question of whether a plaintiff had standing when she had purchased an insurance policy that turned out to be void or voidable, even though she had not filed a claim on that policy. It was held that the plaintiff had "articulated a concrete, economic injury: payment of premiums on a void or voidable insurance policy." *Id.* at 574. The plaintiff's injury was equal to "the difference in price between what they would have paid for the policies with full information and what they in fact paid." *Id.* at 575 (citing *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 79 (2d Cir. 2017)). There is unquestionably a difference in value between a valid insurance policy, which is presumptively worth the premium, and a void insurance policy, which is presumptively worth nothing. That, however, is not the case here. The value of Berger's coat is unchanged, regardless of the guarantee policy. As shown below, moreover, L.L. Bean was always entitled to demand proof of purchase (the purchaser was the party to whom it had made its guarantee) and to reject returns of damaged items, given the requirement of good faith in commercial transactions. There is, in short, no difference in value between a satisfaction guarantee with implicit requirements of proof of purchase and good faith and one with identical requirements that have been stated explicitly. Therefore, *Dubuisson* is inapposite, and Berger has not established injury-in-fact.

Refining focus, L.L. Bean was always entitled to demand proof of purchase from customers. Both the original policy and the revised policy offered a guarantee only to L.L. Bean

7

customers and not to their assigns. *See* Old Policy. As a result, L.L. Bean has always been permitted to refuse a return from an assign. Should a dispute have arisen over whether a prospective returner was a customer or an assign of a customer, resolution of such a dispute would have required the claimant to produce proof of purchase. Indeed, L.L. Bean's original return policy requested that customers "include [the original receipt] with the items [they] wish to return or exchange." Old Policy. The original policy also provided that the company "may either require a receipt or decline a return or exchange in certain situations," which included cases where "an item . . . has been defaced . . . soiled or contaminated . . . [or] damaged due to fire, flood or natural disaster." *Id.* Off base, then, is Berger's claim that L.L. Bean's earlier promise to take back a purchase that is not "lasting as long as [the customer] think[s] it should," Old Policy, was an unconditional promise to take back any item at the customer's sole discretion.[1] Quite to the contrary, even the original policy contained a discretionary proof of purchase requirement with conditions pertaining to damage to the item.

To press the point further, Berger was never entitled to return a product that had been misused or subject to excessive wear and tear. As noted above, that understanding is in complete harmony with L.L. Bean's old return policy. Moreover, the statutes that plaintiff invokes here impose duties of good faith and requirements of reasonableness that governed the original

---

[1] Plaintiff would, at some point, be likely to point again to L.L. Bean's Christmas 2013 catalog, which allegedly stated that its return policy carried no conditions. *See* Compl. ¶ 15 (quoting L.L. Bean Catalog, Christmas 2013). However, no reasonable consumer could believe that L.L. Bean would accept absolutely any return, no matter how tattered the item or how strong the evidence that the returner was not the original purchaser. As Judge Gonzalez Rogers put it at oral argument in *Shirley*, "the notion that some consumer would think that they can lease a piece of clothing . . . is unreasonable." Tr. of Proceedings, *Shirley*, at 28:12-13 (ECF No. 39-1, at 30). Nor would a reasonable consumer believe that an unconditional guarantee was intended to release the consumer from the obligations of good faith that are implicit in every commercial transaction.

8

warranty. For example, the Magnuson-Moss Warranty Act provides that the duties it imposes on warrantors are abrogated if the warrantor "can show that the defect, malfunction, or failure of any warranted consumer product to conform with a written warranty, was caused by damage (not resulting from defect or malfunction) while in the possession of the consumer, or unreasonable use (including failure to provide reasonable and necessary maintenance)." 15 U.S.C. § 2304(c). Therefore, even under the original policy, L.L. Bean was excused from accepting a return that fell under the newly imposed special conditions.

To the extent Berger brings claims under contract law, its contract with L.L. Bean similarly excused the retailer from accepting returns covered by the new conditions. The Court cannot, giving the pleading of a putative nationwide class, expend its resources to recite the contract law of every U.S. jurisdiction, but it can take as a model the Uniform Commercial Code, under which "[e]very contract or duty . . . imposes an obligation of good faith in its performance and enforcement," U.C.C. § 1-304. The Code, in turn, defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Id.* § 1-201(b)(20).[2] Clearly, an attempt to return a product that has been misused, abused, neglected, damaged by a pet, or improperly cared for would be dishonest and, thus, not in good faith. Indeed, it would be a patent lie to claim that a product was "not working or fitting or standing up to its task or lasting as long as you think it should," Old Policy, when the product had been "'damaged by misuse, abuse, improper care or negligence, or accidents (including pet damage)' or suffer[ed] from 'excessive wear and tear,'" Opp'n at 3 (quoting Compl. ¶ 19).

In any event, to the extent that plaintiff construes the old guarantee as triggering L.L.

---

[2] The Restatement similarly provides, "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205.

9

Bean's duties under the guarantee on a customer's actual satisfaction (emphasizing the language "as long as *you* think it should"), general contract principles caveat that courts should ask "whether a *reasonable person* . . . would be satisfied," Restatement (Second) of Contracts § 228 (emphasis added). When such an inquiry is impossible, the Restatement nonetheless mandates that "the exercise of judgment must be in accordance with the duty of good faith and fair dealing." *Id.* cmt.a. Therefore, contract law never allowed plaintiff an unqualified lifetime right under the old guarantee to return, at her sole discretion, damaged or misused items. The revised policy, as a result, merely makes explicit what had already been implied by law.

In sum, because the new conditions are no more restrictive than the implicit conditions of the original policy, Berger has not shown that her jacket decreased in value. On the other approach to standing, given that she has not attempted to return the jacket, she has not shown that L.L. Bean will not accept her return. Having made neither of these showings, Berger has not established injury-in-fact and does not have Article III standing.

d. Unnamed Class Members

On a final note, the fact that some unnamed class members may have suffered injuries-in-fact does not create subject matter jurisdiction. *See Spokeo*, 136 S. Ct. at 1547 n.6 ("[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976))). Therefore, Berger's argument, based primarily on social media posts, that other class members' returns have been refused is of no moment. Subject matter jurisdiction remains wanting.

III. Ripeness

To the extent that Berger seeks declaratory relief, her claim is unripe. "A federal court may exercise jurisdiction over an action seeking a declaratory judgment only if there 'exists . . . an "actual controversy."' This requires, among other things, that a dispute be 'ripe' for adjudication." *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 510-11 (S.D.N.Y. Aug. 15, 2018) (alterations in original) (first quoting *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001); then citing *Jefferson v. Abrams*, 747 F.2d 94, 96 (2d Cir. 1984); and then citing *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 838, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003)). The ripeness inquiry focuses on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967).

In Berger's case, her purported injury "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all,'" *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985)). Substantial uncertainty exists as to whether L.L. Bean would accept a return of plaintiff's coat, but that uncertainty is due entirely to plaintiff's failure to attempt to return her coat. On a litigation bridge to nowhere, the parties ask the Court to complete the journey by engaging in a game of "what if" and by reviewing, under seal, numerous internal corporate documents regarding implementation scenarios for the new policy. They advance divergent interpretations of how these documents might shape a response to an attempt by Berger to return her jacket. That the Court is invited to wade into the roiling waters of how a hypothetical L.L. Bean sales representative might apply corporate policy to a speculative future return of the jacket in some undefined condition resulting

from unspecified circumstances proves convincingly that any such contingency is not now fit for judicial decision. Accordingly, the Court must find the claim stated by Berger to be unripe, precluding judicial resolution and declaratory judgment.

Underscoring this conclusion, there is no hardship to plaintiff of withholding judicial consideration at this time. If plaintiff should ever attempt to return her coat and find her return denied, she may seek relief at that time. Given the present uncertainty and the availability of future judicial intervention, plaintiff's claim is unripe.

## Conclusion

For the foregoing reasons, defendant's motion is granted, and plaintiff's complaint is dismissed without prejudice.[3]

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
December 28, 2018

/S/ Judge Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge

---

[3] Dismissal must be without prejudice because "where a federal court lacks subject matter jurisdiction, it also lacks the power to dismiss [an] action with prejudice," *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999).